UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

TREMEL WILLIAMSON,                          :        Docket No.  12 Civ. 5635 (VB)

                          Plaintiff,

          -against-                         :

POLICE OFFICER GRIFFIN, OFFICER             :
DETECTIVE ANTONINI, OFFICER CAMPO,
and SERGEANT FAGAN JOHNSON.,                :

                          Defendants.       :

------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Quinn Law Firm
Attorneys for the Defendants
399 Knollwood Road
White Plains, NY 10603
(914) 997-0555

# TABLE OF CONTENTS

Introduction.............................................................................................................1

Preliminary Statement..............................................................................................1

Statement of Facts...................................................................................................1

Standard of Review.................................................................................................2

Argument...............................................................................................................3

POINT I      THE EXCESSIVE FORCE CLAIM FAILS AS A
MATTER OF LAW AGAINST ALL DEFENDANTS..............................3

     A. The Excessive Force Claims Fail on the Merits; there is no Material
Issue of Fact Which Remains and All the Credible Evidence Contradicts
Plaintiff's Baseless Claims...............................................................4

         1. The Claim That Officer Campo Assaulted Plaintiff In the
Elevator Should Be Dismissed .................................................7

         2. Plaintiff's Claim That He Was Choked and Had His Intestines
and Testicles Squeezed By Sergeant Fegan Should Be Dismissed.................9

         3. Plaintiff's Claim That He Was Cavity Searched by Detective
Antonini During the Narcotics Search Should Be Dismissed......................10

     B. The Defendants are Entitled to Qualified Immunity.....................................14

POINT II      THE STATE LAW CLAIMS FOR ASSAULT AND BATTERY
FAIL AS A MATTER OF LAW AGAINST ALL DEFENDANTS..............18

POINT III      THE STATE LAW CLAIM FOR INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW
AGAINST ALL DEFENDANTS..................................................19

POINT IV      THE NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW
AGAINST ALL DEFENDANTS..................................................21

POINT V      SINCE PLAINTIFF MAKES NO CLAIM AGAINST DETECTIVE
GRIFFIN, ALL CLAIMS AGAINST HIM MUST BE DISMISSED.............21

Conclusion............................................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

*Alvarez v.City of New York,* 2015 WL 1499161, at 11 (S.D.N.Y. 2015)……………….........21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)……………………………..2, 8

*Barclay v. Poland,* 2010 WL 3657664 (W.D.N.Y. 2010)…………………………………….4

*Bell v. Chemung Cnty.,* 2006 WL 839413, *3 (W.D.N.Y. 2006)…………………………….16

*Bolden v. Village of Monticello,* 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004)………………10, 14

*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)…………………………………………..5

*Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir. 1995)…………………………………………..5

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)……………………………………………….4, 5

*Cerrone v. Brown,* 246 F.3d 194, 202-203 (2d Cir. 2001)…………………………………….15

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 383 (S.D.N.Y. 2013)………………....15

*Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992)…………………………………………10

*Cuadrado v. Zito,* 2014 WL 1508609, at 2 (S.D.N.Y. 2014)……………………………….8, 9, 10

*D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998)……………………………2

*Dorn v. Maffei,* 386 F.Supp.2d 479, 486 n.5 (S.D.N.Y. 2005)……………………………….21

*Dukes v, City of New York,* 879 F. Supp. 335, 339 (S.D.N.Y. 1995)………………………….2

*EEOC v. Die Fliedermaus, L.L.C.,* 77 F.Supp.2d 460, 472 (S.D.N.Y.1999)…………………20

*Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir. 1994)………………….2

*Graham v. Connor,* 490 U.S. 386, 395 (1989)……………………………………………….3, 16

*Graham v. City of New York,* 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013)…………………18

*Hansel v. Sheridan,* 991 F.Supp. 69, 75 (N.D.N.Y.1998). ……………………………………20

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)…………….14

*Howell v. New York Post. Co., Inc.,* 81 N.Y.2d 115, 121, (1993)……………………………19

*Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009)...................................18

*James Biggs v. City of New York*, 2010 WL 4628360, at 8 (S.D.N.Y. 2010)....................18

*Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y.2003)........................................................22

*Johnson v. Annucci*, 2016 WL 3847745, at 2 (S.D.N.Y. 2016)..............................................5, 15

*Johnson v. City of New York*, 2016 WL 7335663, at 2 (S.D.N.Y. 2016)...........................5

*Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006)......................................................3

*Kerman v. City of New York,* 261 F.3d 229, 239 (2d Cir. 2001)....................................3

*Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986)..............................3

*Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)...............................................14, 15

*Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)....................15

*Maryland v. Macon,* 472 U.S. 463, 470-71 (1985).................................................11

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)................2

*Mesa v. City of New York*, 2013 WL 31002, at 27 (S.D.N.Y. 2013)..................................18

*Murphy v. Am. Home Prod. Corp.,* 58 N.Y.2d 293, 303(1983)......................................19

*Pascual v. Fernandez*, 2013 WL 474292 at 6 (S.D.N.Y. 2013).....................................4

*Phillips v. Eppolito et al.,* 2004 U.S. Dist. LEXIS 18565, *5 (S.D.N.Y. 2004)....................3

*Posr v. Doherty,* 944 F.2d 91, 94–95 (2d Cir.1991)..............................................18

*Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir. 2001)....................................22

*Quiles v. City of New York,,* 2016 WL 6084078, at 11 (S.D.N.Y. 2016)............................12

*Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 40 (2d Cir.1985)............18

*Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir. 1993)............................................14

*Rodriguez v. City of New York,* 2012 WL 1658303, at *5 (S.D.N.Y. May 11, 2012)..............22

*Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993).............................................16

*Sanders v. City of New York*, 2015 WL 2331105, at 3 (S.D.N.Y. 2015).............................5

*Santiago v. City of Yonkers*, 2015 WL 6914799, at 3 (S.D.N.Y. 2015)..............................5

*Sarnicola v. County of Westchester*, 229 F.Supp.2d 259, 275 (S.D.N.Y. 2002)..............17

*Saucier v. Katz*, 533 U.S. 194, 206 (2001)...........................................................4

*Seltzer v. Bayer*, 272 A.D.2d 263, 264 (1st Dep't 2000)......................................19

*Shah v. Kuwait Airways Corp.*, 653 F.Supp.2d 499, 502 (S.D.N.Y. 2009)...........................5

*Smith v. City of New York*, 2010 WL 3397683, 10 (S.D.N.Y. Aug. 27, 2010)......................6

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995)................................................... 5

*Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000)...................................................4

*United Nat'l Insurance Co v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993).....................21

*United States v. Hernandez*, 473 U.S. 531, 537 (1985)...........................................10

*United States v. Walsh*, 194 F.3d 37, 50 (2d Cir.1999)................................................16

*Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)......................................................10

*Velasquez v. Bankich*, 2000 U.S. Dist. LEXIS 15412, at 4 (S.D.N.Y. 2000)........................3

*Westinghouse Elec. Corp. v. N.Y.C. Tran. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990)......2

# INTRODUCTION

Defendants Detective Wendell Griffin, Detective Camilo Antonini, Sergeant Sean Fegan, and Police Officer Joseph Campo (collectively, the "Defendants"), respectfully submit this memorandum of law in support of their motion for summary judgment.

# PRELIMINARY STATEMENT

This is a civil rights action brought by Tremel Williamson ("Williamson" or "Plaintiff"). The complaint, originally filed July 14, 2015, and amended on August 24, 2015, alleges that members of the Mount Vernon Police Department used excessive force in searching and arresting Plaintiff during the execution of a search warrant at Plaintiff's residence. Plaintiff's claims appear to include a claim for a violation of Plaintiff's rights to be free from excessive force under 42 U.S.C. § 1983, and related state-law claims of assault, battery, intentional infliction of emotional distress, and negligence. The elements of an excessive force claim under 42 U.S.C. § 1983, and a claim for assault and battery brought under state law are essentially identical. Plaintiff does not appear to challenge the validity of his arrest, which was duly authorized by a search warrant signed by Mount Vernon City Court Judge Helen M. Blackwood. For the reasons detailed below, the Defendants are entitled to summary judgment.

# STATEMENT OF FACTS

The Court is respectfully referred to the pertinent facts and procedural history set forth in detail in the accompanying statement of undisputed facts submitted by the Defendants pursuant to Rule 56.1 of the Local Rules of the Southern District of New York. ("Rule 56.1"). All exhibits referenced herein are annexed to the accompanying declaration of Andrew C. Quinn, Esq.

## STANDARD OF REVIEW

The purpose of summary judgment is to expedite civil actions by eliminating from the trial calendar those claims that can be properly resolved as a matter of law. Summary judgment is appropriate where no genuine issue of material fact exists. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied,* 524 U.S. 911 (1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Second Circuit has held that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *See Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir. 1994). In *Westinghouse Elec. Corp. v. N.Y.C. Transit Authority,* the Court stated that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims . . . thereby permitting courts to avoid 'protracted, expensive and harassing trials." 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)). Furthermore, "the substantive law governing the case will identify those facts that are material, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See Dukes v, City of New York,* 879 F. Supp. 335, 339 (S.D.N.Y. 1995*).*

To survive a motion for summary judgment, the non-moving party must do more than present evidence that is merely colorable, conclusory, or speculative. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Additionally, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Phillips v. Eppolito et al.,* 2004 U.S. Dist. LEXIS 18565, *5 (S.D.N.Y. 2004). The non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *See Velasquez v. Bankich*, 2000 U.S. Dist. LEXIS 15412, at 4 (S.D.N.Y. 2000) (citing *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986)).

Here, the Court should grant summary judgment in favor of the Defendants as Plaintiff has not and cannot proffer any admissible evidence beyond his bare allegations that would allow the fact finder to properly proceed to a verdict in his favor, and summary judgment should be granted as a matter of law.

## ARGUMENT

### POINT I

### THE EXCESSIVE FORCE CLAIM FAILS AS A MATTER OF LAW AGAINST ALL DEFENDANTS

Excessive force claims are analyzed under an objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with "the 20/20 vision of hindsight." *Id.* at 396. *See also Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. A determination of reasonableness under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *See Kerman v. City of New York,* 261 F.3d 229, 239 (2d Cir. 2001)(internal quotation marks omitted). "A claim [of] excessive force ... is subject

to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case." *See Sullivan v. Gagnier,* 225 F.3d 161, 165 (2d Cir. 2000). Furthermore, qualified immunity protects police officers from the "sometimes hazy border between excessive and acceptable force." *See Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(internal quotation marks omitted), *overruled in part on other grounds by Pearson,* 555 U.S. 223, 129 S.Ct. 808.

A.  **The Excessive Force Claims Fail on the Merits; there is no Material Issue Of Fact Which Remains And All the Credible Evidence Contradicts Plaintiff's Baseless Claims**

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. "If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate." *See Cuadrado v. Zito,* 2014 WL 1508609, at 2 (S.D.N.Y. 2014)(Briccetti, J.); citing *Celotex Corp. v. Catrett,* 477 U.S. at 323. To prevail on an excessive force claim, Plaintiff must have suffered an actual injury that resulted from the Defendant officer's use of force. *See Pascual v. Fernandez,* 2013 WL 474292 at 6 (S.D.N.Y. 2013); *Barclay v. Poland,* 2010 WL 3657664 (W.D.N.Y. 2010). In the instant matter, Plaintiff has failed to prove any injury resulted from his interactions with the officers at any time on January 20, 2015. Rule 56(e) requires that in order to defeat a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial. Such an issue is not created by a mere allegation in the pleadings [citations omitted], nor by surmise or conjecture on the part of the litigants." *See Potamkin Cadillac Corp.,* 689 F.2d at 381.

Where a *pro se* litigant is involved in a case, as is the case in the instant matter, "the court has an obligation to read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments they suggest." *See Johnson v. Annucci*, 2016 WL 3847745, at 2 (S.D.N.Y. 2016); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (*citing Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). ""[B]ald assertions," however, cannot overcome a motion for summary judgment, even if the opposing party is *pro se*." *See Santiago v. City of Yonkers*, 2015 WL 6914799, at 3 (S.D.N.Y. 2015); citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1995); *see also Johnson v. City of New York*, 2016 WL 7335663, at 2 (S.D.N.Y. 2016). "Even a *pro se* party, however, may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." *See Sanders v. City of New York*, 2015 WL 2331105, at 3 (S.D.N.Y. 2015) (*Briccetti, J.*); quoting *Shah v. Kuwait Airways Corp.*, 653 F.Supp.2d 499, 502 (S.D.N.Y. 2009) *vacated on other grounds*, 387 F. App'x 13 (2d Cir. 2010).

In the instant case, Plaintiff's allegations appear to be more fabrication than based in reality, as evidenced by Plaintiff's misstatement of virtually every material fact, including (1) who was riding with him in the elevator when he claims he was assaulted; (2) his belief that he was originally stopped by Detective Antonini on the street, when it was in fact Detective Campo and Griffin; (3) he incorrectly claims that he was cavity searched by Detective Antonini when, in reality, he was searched by Officer Campo with Sergeant Fegan present; and (4) Plaintiff claims that he was booked and processed by Antonini following his arrest when, in fact, Antonini had no contact with Plaintiff once he was returned to Mount Vernon Police Headquarters. Plaintiff's misidentification of the officers is particularly telling inasmuch as Plaintiff is very familiar with

Sergeant Fegan, who arrested him in 2009 and against whom Plaintiff made a nearly identical claim of an improper cavity search.

Assuming *arguendo,* that Plaintiff could actually present any credible evidence of *de minimis* injuries, when analyzed under Fourth Amendment standards, claims of excessive force which establish nothing more that *de minimis* injuries are typically dismissed. *See Smith v. City of New York,* 2010 WL 3397683, 10 (S.D.N.Y. Aug.27, 2010). Here, the undisputed facts reveal that Plaintiff cannot provide any credible evidence to show that *any* injury resulted from his interactions with the officers, nor can he present credible evidence that any officer used excessive force.

Upon review of the notice of claim, amended complaint, and Plaintiff's deposition, Plaintiff seems to allege three distinct instances in which the Defendants allegedly used excessive force. First, Plaintiff claims that Officer Campo punched him in the head in the elevator, slammed his head against the wall, and "roughed him up" on the way up to the apartment. (Williamson, at p. 51-53, 64-71). Second, Plaintiff claims that Sergeant Fegan squeezed his intestines and testicles and choked his neck while he was being strip searched in the apartment bathroom. (Id.) Third, Plaintiff claims that Detective Antonini subjected him to a cavity search in the apartment. (Id. At 3B, ¶ 19; Williamson at pp. 99-100). Plaintiff offers no factual support for *any* of his allegations, other than his recollection and bare assertions of being "violated". We address each of Plaintiff's claims individually *infra*. As a backdrop to all of Plaintiff's claims, it should be noted that Plaintiff is a convicted drug offender with a long history of crack cocaine abuse who admitted to smoking two marijuana "blunts" on the day in question, and six to seven marijuana "blunts" every day. (Rule 56.1, at ¶24 and ¶ 27).

1. The Claim That Officer Campo Assaulted Plaintiff In the Elevator Should Be Dismissed

Initially, it is undisputed that the officers had probable cause to arrest and search Plaintiff, the basis for which was the valid and duly executed search warrant issued for Plaintiff and apartment 5K at 70 West Third Street. (Rule 56.1, at ¶ 6). Plaintiff does not challenge the legality of his arrest. Plaintiff claims that he was arrested on West Third Street that day by Detective Antonini and Officer Griffin, which is wrong. (Williamson, at p. 38-48). In fact, the arresting officers were Detective Griffin and Officer Campo - the affiant to the search warrant. (Rule 56.1, at ¶ 9).

Plaintiff also claims that he was assaulted by Campo on the elevator on the way up to the apartment (Williamson, at p. 51-53). This claim is also factually incorrect: Officer Campo did not ride the elevator with Plaintiff, Detective Griffin and Officer Vitelli did. Specifically, after securing the keys to apartment 5k from Plaintiff, Campo and Griffin drove back to 70 West Third Street, and Campo went up to the apartment by himself to deliver the keys so that the Narcotics Team could gain entry, while Griffin remained down in the car with Plaintiff. (Rule 56.1, at ¶ 11). Eventually, Fegan ordered Officer Vitelli (hereinafter "Vitelli") to go down the elevator to the car and assist Detective Griffin in escorting Plaintiff up to the apartment. (Rule 56.1, at 13). Griffin, who was waiting outside the building with Plaintiff, was notified that the Narcotics Unit made entry into the apartment and that Vitelli was coming downstairs to assist him in escorting Plaintiff up to the apartment. (Rule 56.1, at 13). Griffin and Vitelli then walked Plaintiff into the building and took the elevator up to apartment 5K. (Rule 56.1, at 13). The only parties in the elevator at that time were Vitelli, Griffin, and Plaintiff. (Rule 56.1, at 13).

Campo was not present in the elevator when Plaintiff was transported up to the apartment. (Rule 56.1, at 13). Campo never struck Plaintiff's head against an elevator wall, and

7

Plaintiff never complained of having his head struck or that any pain was the result of being struck. (Rule 56.1, at 13). Contrary to Plaintiff's claim, there was never a dog in the elevator when Plaintiff was in the elevator, and Officer Campo was already upstairs in the apartment when Griffin and Vitelli escorted Plaintiff up to the apartment. (Rule 56.1, at 13). At no point did any officer use excessive force on Plaintiff. (Rule 56.1, at 13).

Every officer corroborates the fact that Campo was never in the elevator with Plaintiff. Meanwhile, Plaintiff offers no witnesses in support of his assertion that excessive force was used against him while he was in the elevator. Absent the naked assertions in his deposition, Plaintiff's claims are devoid of any showing that Campo was in the elevator with him at the time he was brought up to the apartment. Plaintiff's excessive force claim lacks credibility, as he submits no credible evidence in support of his alleged injuries. His claims fall short of the standard required for an excessive force claim. *See Cuadrado,* 2014 WL 1508609, at 2.

In fact, Plaintiff offers no evidence, witness or otherwise, that he sustained injuries consistent with the version of events he claims occurred, regardless of who was in the elevator with him. Plaintiff claimed that he suffered physical injuries during the incident, including scrapes and bruises, yet if Plaintiff's story is to be believed, then the type of force alleged would have left *some evidence* of injury. Plaintiff was examined shortly after being transferred to the Westchester Correctional Facility on the day of his arrest and the medical staff from Westchester Medical Center found no evidence of physical injuries to Plaintiff's person as alleged in the complaint. (Rule 56.1, at ¶ 23). Plaintiff offers no credible evidence that any officer used excessive force in the elevator, and also is unable to submit a shred of credible evidence to show that he suffered any injuries related to his bare allegations. Plaintiff therefore has no claim for excessive force. *See Anderson*, 477 U.S. at 249-50.

2. Plaintiff's Claim That He Was Choked and Had His Intestines and Testicles Squeezed By Sergeant Fegan Should Be Dismissed

Plaintiff's claims against Fegan are equally baseless. Plaintiff alleges that while he was being searched by Antonini in the bathroom, Fegan choked him. (Williamson, at p. 99). He also claims that Fegan squeezed his testicles and intestines, where he had a pre-existing hernia. (Williamson, at p. 180). Again Plaintiff offers no credible evidence, beyond his bare allegation, that Fegan ever used excessive force or even made contact with Plaintiff. While Fegan was present with Campo and supervised the "narcotics search" (Rule 56.1, at ¶ 17), Fegan never made contact with Plaintiff. The search was performed out of sight from the three individuals detained in the front living room. (Fegan p. 2, at ¶ 7).

Plaintiff can offer no evidence to corroborate his claim, nor can he provide any evidence that he suffered any injury from any action by Fegan. During the entirety of the time at the apartment and while at the station, Plaintiff never complained of any physical pain or injury and never requested medical attention. (Rule 56.1, at ¶ 20). None of the extensive medical examinations and reports made in the immediate and long-term aftermath of Plaintiff's arrest and subsequent incarceration details any injuries consistent with Plaintiff's claims of injury to his testicles and/or intestines. (Rule 56.1, at ¶ 23). Plaintiff has "failed to make a sufficient showing on an essential element of his case on which he has the burden of proof", and as a result his claim for excessive force against Fegan fails as a matter of law. *See Cuadrado,* 2014 WL 1508609, at 2.

3. Plaintiff's Claim That He Was Cavity Searched by Detective Antonini During the Narcotics Search Should Be Dismissed

Plaintiff falsely alleges that Detective Antonini conducted a cavity search of his person while in the bathroom. Again, Plaintiff is fundamentally mistaken: Antonini was not present when Plaintiff was subjected to a "narcotics search" while in the bathroom, but was elsewhere in the apartment conducting a search of the bedrooms. (Rule 56.1, at ¶ 19). Officer Campo conducted a search of Plaintiff while in the bathroom under the supervision of Sergeant Fegan. Indeed, Antonini never conducted a search of any individual during the execution of the search warrant on January 20, 2015. (Rule 56.1, at ¶ 19). Antonini never conducted a search of Plaintiff, and was never in or near the bathroom during the search of Plaintiff. (Rule 56.1, at ¶ 19). In fact, Antonini has never conducted a body cavity search on any individual under any circumstance in his lifetime. (Rule 56.1, at ¶ 19).

In any event, even accepting Plaintiff's allegations as true, given his admitted history of concealing narcotics on his person, the Defendant officers were justified in conducting a strip search of Plaintiff. The reasonableness of conducting a search depends upon all of the circumstances surrounding the search and the nature of the search itself. *See United States v. Hernandez*, 473 U.S. 531, 537 (1985); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992)(search is reasonable if the need for the particular search outweighs the invasion of personal rights that the search entails). A valid search warrant "creates a presumption of reasonableness regarding an attendant search." *See Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004). However, the attendant search must still be reasonable. "A 'reasonable suspicion' of wrongdoing is something stronger than a mere 'hunch,' but something weaker than probable cause." *See Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997). The constitutionality of a strip

search "turns on an objective assessment of the ... facts and circumstances confronting [the searching officer] at the time, and not on the officer's actual state of mind at the time" of the search. *See Maryland v. Macon,* 472 U.S. 463, 470-71 (1985).

In the instant case, due to the officers' prior dealings with Plaintiff, his history of concealing crack cocaine contraband in his underwear, and his well-known history as a drug possessor[1], Fegan instructed Campo to conduct a narcotics search of Plaintiff. (Rule 56.1, at ¶ 28). According to both Officer Campo and Sergeant Fegan, Officer Campo brought Plaintiff to the rear bathroom and conducted a narcotics search. (Rule 56.1, at ¶ 17). Plaintiff was wearing a jacket and a "hoody". (Williamson p. 98, at 15). Fegan was present with Campo and supervised the search. (Rule 56.1, at ¶ 17). Fegan never made contact with Plaintiff. (Rule 56.1, at ¶ 17). The search was performed out of sight from the three individuals detained in the front living room. (Rule 56.1, at ¶ 17).

Campo removed Plaintiff's shoes and shirt, loosened his belt and pulled his pants and boxer shorts to approximately knee-level. (Rule 56.1, at ¶ 18). Campo asked Plaintiff to "squat and cough" to ensure that he did not possess any contraband or narcotics in his anus or below his scrotum, and Plaintiff complied with the request. (Rule 56.1, at ¶ 18). Campo pulled Plaintiff's pants back up, returned his shoes, and returned him to the living room. (Rule 56.1, at ¶ 18). During the search of the apartment, Plaintiff never complained to Fegan or anyone else that he had been cavity searched, and never asked for medical attention. (Rule 56.1, at ¶ 18).

---

[1] Plaintiff testified that he has three prior arrests in Mount Vernon in 2005, 2009, and 2014. (Rule 56.1, at ¶ 26). The 2005 arrest was for possession of crack cocaine and he received probation and served one year on a violation of probation. (Rule 56.1, at ¶ 26). The 2009 arrest was for possession of crack cocaine and he received a conditional discharge on a misdemeanor plea. (Rule 56.1, at ¶ 26). The 2014 arrest was for possession of heroin. (Rule 56.1, at ¶ 26). In total, Plaintiff has been arrested seven to eight times in all jurisdictions. (Rule 56.1, at ¶ 26).

The credible evidence establishes that the officers were justified in conducting a "narcotics search" of Plaintiff. The search of Plaintiff was clearly justified insofar as the Defendant officers reasonably believed that Plaintiff, the subject of a valid and duly executed search warrant, was concealing contraband on his person. *See Quiles v. City of New York,*, 2016 WL 6084078, at 11.

Indeed, Plaintiff doesn't dispute that he once hid crack cocaine in his anus, and doesn't dispute that he had drugs in the apartment. (Rule 56.1, at ¶ 15). In fact, Plaintiff testified that he told Garcia he had drugs in the apartment. (Rule 56.1, at ¶ 15). Plaintiff was also wearing winter clothing at the time, thus further justifying the strip search. (Rule 56.1, at ¶ 17). The search also took place out of sight from anyone else in the apartment. (Rule 56.1, at ¶ 17). The record clearly indicates that the facts and circumstances available to the officers on the scene were more than enough to establish a reasonable belief that Plaintiff was concealing contraband or a weapon on his person. Therefore, the narcotics strip search of Plaintiff was reasonable. *Id.*

Furthermore, Plaintiff was not subjected to a physical anal cavity search as he alleges, and he offers no credible evidence in support of his claim that he was. Plaintiff claims that he was escorted to the bathroom and forcibly held up against a wall by Sergeant Fegan when Antonini, "opened up my anus and then he was looking and then he put a finger in it to see if any plastic or anything was hanging out my anus". (Williamson, p. 123, ll. 4-7). Plaintiff clarified and testified that Antonini opened up his "buttocks" and that he was "pretty sure" it was a finger. (Id. At 123, ll. 8-20). Plaintiff did not see Antonini perform the cavity search, but believed it was Antonini because he was the only person behind him. (Id. At 123-25). Plaintiff testified that "I wouldn't say it was all the way up in there or anything like that, but I felt a puncture. It was punctured like that (indicating). It didn't go all the way in like somebody's putting something all

the way in you, but I felt a puncture that he was looking for a plastic bag or something stating that something was up there". (Id. At 126-27).

Plaintiff never reported being cavity searched to anyone while he was at the MVPD (Rule 56.1, at ¶ 20). Plaintiff testified that medical personnel ran tests at Westchester Medical Center, including a sexual abuse kit, to see if he was bleeding from the anus, which indicated no trauma (Rule 56.1, at ¶ 22). Plaintiff further testified that he never experienced any anal bleeding. (Rule 56.1, at ¶ 22). The medical examination of his anus revealed no injury nor any "puncture" to Plaintiff's anus. (Rule 56.1, at ¶ 23). Thus, other than the naked assertion that he was cavity searched, Plaintiff's claim contradicts all of the medical and witness evidence in the case.

Importantly, Plaintiff has a history of making the exact same specious claim. Specifically, in 2009, Plaintiff claimed the Sergeant Fegan conducted an anal cavity search upon him following his arrest for possession of narcotics. Plaintiff testified that in 2009 he was arrested by Sergeant Fegan and subjected to a cavity search at Mount Vernon Headquarters. (Williamson p. 154, at 5-23). Plaintiff testified that crack cocaine was found in his anus. (Williamson p. 155, at 2-7). That testimony was inaccurate: Sergeant Fegan did find a large bag of crack cocaine hidden in Plaintiff's underwear during the search, but did not perform a body cavity search. (See MVPD Detective Arrest Report dated January 22, 2009 attached hereto as Exhibit K). Plaintiff testified that he prepared a notice of claim in 2009 alleging a cavity search against Sergeant Fegan. (Williamson p. 204, at 2).[2] However, as was the case in the 2015 incident, the medical examinations in January of 2009 found no evidence of injury to Plaintiffs rectum and no evidence of an anal cavity search. (See Physician Notes Physician Notes from Mount Vernon Hospital dated January, 24, 2009 (Exhibit M)). Plaintiff's chief complaint in follow up visits to Mount Vernon Hospital was knee pain, which was consistent with Sergeant Fegan's account of

---

[2] See also Notice of Claim, dated April 20, 2009, attached hereto as Exhibit L.

having to take Plaintiff to the floor as a result of Plaintiff resisting the search. (See Physician Notes attached hereto as Exhibit M). Plaintiff also alleged that he was cavity searched following his arrest in 2014 to the County Corrections Department, according to a Westchester County Department of Corrections progress note. When confronted with the Progress Note, Plaintiff did not recall making that allegation. (Williamson p. 202, at 2-19).[3]

Respectfully, the Court should grant summary judgment in favor of the Defendants on Plaintiff's claim that he was cavity searched insofar as he has not and cannot proffer any credible evidence beyond his bare allegations that would allow the fact finder to properly proceed to a verdict in his favor.

**B.    The Defendants are Entitled to Qualified Immunity**

The Defendants are entitled to qualified immunity with regard to their actions in executing the search warrant and effecting Plaintiff's arrest on January 20, 2015. A police officer is entitled to qualified immunity for his discretionary actions where his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or if it was "'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *See Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). "Qualified immunity shields a public official from civil liability when his conduct 'does not violate a clearly established statutory or constitutional right.'" *See Bolden v. Village of Monticello*, 344 F. Supp 2d 407, 410 (S.D.N.Y. 2004), quoting *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). "A police officer is qualifiedly immune from suit if (1) his conduct does not violate clearly

---

[3] See also attached as Exhibit I, Westchester County DOC, Correct Care Solutions Mental Health Progress Notes, dated 1/21/2015.

established constitutional rights, or (2) it was objectively reasonable for the officer to believe his conduct did not violate clearly established constitutional rights." *Id.*

In the excessive force context, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *See Lennon*, 66 F.3d at 425. The Defendants are entitled to qualified immunity because it was objectively reasonable for a reasonably competent officer in the same position to believe that their actions did not violate a clearly established constitutional right. *See Cerrone v. Brown*, 246 F.3d 194, 202-203 (2d Cir. 2001). "The second element of qualified immunity analysis permits a court to grant summary judgment if a reasonable officer could have believed his or her actions were lawful." *Id.* As a result, the Defendants are entitled to summary judgment on qualified immunity grounds if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *See Lennon*, 66 F.3d at 420 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

In the instant case, Plaintiff makes three distinct claims against three officers: that Officer Campo "roughed him up" in the elevator; that Sergeant Feegan squeezed his intestines and testicles and choked him during the strip search in the bathroom; and that Detective Antonini subjected him to a cavity search. In each instance, accepting as true the allegations contained in the Amended Complaint and affording Plaintiff every liberal interpretation of his claims, *see Johnson v. Annucci*, 2016 WL 3847745, at 2 (S.D.N.Y. 2016), the officers are nevertheless entitled to dismissal on the grounds of qualified immunity.

Specifically, Plaintiff alleges that, while riding in the elevator, Officer Campo "threw me against the wall or whatever and then I didn't know if he was going to swing at me so I had

ducked low when I was still in handcuffs, and that's when he had dragged me, like, by my arms because he turned me around and then when the elevator had opened, he had dragged me from the back". (Williamson, p. 65). In essence, Plaintiff complains that he was "roughed up" but never injured by Officer Campo.

With respect to Plaintiff's second claim, he alleges that Sergeant Fegan squeezed his testicles and intestines where Plaintiff had a previously diagnosed hernia (Williamson, p. 179-80), and that Sergeant Fegan choked him by "applying pressure" to his neck while he was being strip searched by Antonini. (Williamson, p. 112). Plaintiff describes the choking as being grabbed by his neck (Id., p 111) and pushed into the bathroom. (Id., p. 114). Plaintiff claims he was struggling with the officers because he did not wish to be strip searched, and that Sergeant Fegan placed his forearm on the back of Plaintiff's neck while his head was against the wall. (Id., p. 117). Plaintiff describes Fegan as "pushing" him against the wall. (Id., p. 120). He describes the pain as an "eight to a nine" on a scale of ten but never alleges that he lost the ability to breathe at any time, nor did he feel dizzy or near losing consciousness.

For a claim of excessive force to be actionable, a plaintiff must demonstrate that it was "objectively sufficiently serious or harmful." *See United States v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999). Stated another way, "the force used by a defendant [generally] must be more than *de minimis* in order for a plaintiff's claim to be actionable." *See Bell v. Chemung Cnty.,* 2006 WL 839413, *3 (W.D.N.Y. 2006) (citing *Graham,* 490 U.S. at 397, 109 S.Ct. 1865; *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) (a *de minimis* use of force will rarely suffice to state a constitutional claim)). As the Supreme Court has acknowledged, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (internal citation omitted); *see*

*also Schy v. Vermont*, 2 Fed. Appx. at 102 (under Fourteenth Amendment Due Process standard, "not every infliction of pain reaches the level of a constitutional violation"). In the instant case, simply reviewing Plaintiff's claims and affording them every liberal interpretation, there is still no constitutional deprivation. Because reasonable officers could disagree on the lawfulness of the actions of Officer Campo and Sergeant Fegan, they are entitled to qualified immunity.

Assuming the truth of Plaintiff's third claim that he was subject to a strip or cavity search, which has been definitively contradicted by the affidavits of the Defendants, Defendant Antonini would nevertheless be entitled to qualified immunity. Specifically, Plaintiff acknowledges that he has secreted narcotics in his anus in the past, that he has a lengthy history of narcotics arrests, and that he was in possession of drugs and a firearm on the date of his arrest. Plaintiff claims that he was forced into the bathroom, his buttocks were opened, and his anus was searched for narcotics. He claims that the Antonini was "looking for a plastic bag" with his finger. "[A]n officer who conducts a strip search is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether a strip search was constitutionally justified." *See Sarnicola v. County of Westchester*, 229 F.Supp.2d 259, 275 (S.D.N.Y. 2002).

As pled and testified to by Plaintiff, the decision to conduct a strip search was well within the bounds of the law. It was objectively reasonable for the officers to believe that their actions did not violate a clearly established constitutional right under the claimed facts alleged by Plaintiff. Thus, even if the facts as alleged by Plaintiff were true, the officer who performed the search would be entitled to the defense of qualified immunity.

## POINT II

## THE STATE LAW CLAIMS FOR ASSAULT AND BATTERY
## FAIL AS A MATTER OF LAW AGAINST ALL DEFENDANTS

It is important to note that the state claims for civil assault and battery are inextricably linked to the federal excessive force claim. *See Posr v. Doherty,* 944 F.2d 91, 94–95 (2d Cir.1991) (the claims were grouped in three pairs, each consisting of a claim under 42 U.S.C. § 1983 and a state law tort counterpart...paired together were the § 1983 use of excessive force and state law assault and battery). "This pairing was appropriate since... the essential elements of the two claims in each pair were substantially identical." *Id.* citing *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 40 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). "Federal excessive force claims and state law assault and battery claims against police officers are nearly identical." *See Graham v. City of New York,* 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (*citing Humphrey v. Landers,* 344 Fed. Appx. 686, 688 (2d Cir. 2009)).

Since New York law follows Federal law, a claim of civil assault will not survive in a case where the officer's use of force is determined to have been objectively reasonable. *See Mesa v. City of New York,* 2013 WL 31002, at 27 (S.D.N.Y. 2013). "The same standard is used to evaluate claims of assault and battery under New York law and of excessive force under the Fourth Amendment." *See James Biggs v. City of New York,* 2010 WL 4628360, at 8 (S.D.N.Y. 2010).

For the reasons set forth *infra,* Plaintiff's Fourth Amendment excessive force claim fails in its entirety against the Defendants. Therefore, the state law claims for assault and battery against them must be dismissed as well.

## POINT III

## THE STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW AGAINST ALL DEFENDANTS

A claim of intentional infliction of emotional distress has four elements: "i) extreme and outrageous conduct; ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; iii) a causal connection between the conduct and injury; and iv) severe emotional distress." *See Howell v. New York Post. Co., Inc.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). The requirements of the rule are "rigorous, and difficult to satisfy." *Id.* To prevail on a claim for intentional infliction of emotional distress, a plaintiff must allege conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Murphy v. Am. Home Prod. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Those "few claims" that have been upheld by the Appellate Division have been "supported by allegations detailing a longstanding campaign of deliberate, systematic, and malicious harassment of the plaintiff." *See Seltzer v. Bayer,* 272 A.D.2d 263, 264, 709 N.Y.S.2d 21 (1st Dep't 2000).

Plaintiff has made a claim for emotional distress and claims that this incident caused him mental stress. (Rule 56.1, at ¶ 24). Plaintiff denied prior psychiatric history or psychotropic medications, and also repeatedly denied receiving any psychiatric treatment. (Rule 56.1, at ¶ 24). When asked if he had ever been sexually abused or victimized, Plaintiff responded, "no". (Rule 56.1, at ¶ 24). When asked if he had any history of mental health issues, Plaintiff responded, "no". (Rule 56.1, at ¶ 24). Thus, plaintiff has not introduced any evidence suggesting that he suffered "severe emotional distress" and his claim must be dismissed.

Moreover, Plaintiff was thoroughly examined by Dr. Rehana Latif, a New York licensed Psychiatrist. (Rule 56.1, at ¶ 25). Dr. Latif conducted a psychiatric review of Plaintiff and found that Plaintiff's claims of sexual assault, and its psychological impact, could not be established. (Rule 56.1, at ¶ 24). Dr. Latif diagnosed Plaintiff with poly-substance abuse disorder, substance induced anxiety, and substance-induced depression, and notes that Plaintiff was diagnosed with drug-related insomnia, mood, and anxiety symptoms. (Rule 56.1, at ¶ 24). Dr. Latif's review of Plaintiff's medical chart showed no indication that Plaintiff suffered a major psychiatric injury, and Plaintiff exhibited none of the hallmarks of Post-Traumatic Stress Disorder: no history of diminished interest in activities, no persistent negative state, no persistent detachment, and no hypervigilance. (Rule 56.1, at ¶ 24). Dr. Latif's review of Plaintiff's initial psychiatric evaluation on February 12, 2016 revealed that Plaintiff's symptoms of poor sleep, depressions and anxiety were attributed to Plaintiff's daily use of cannabis and crack, and concluded that the initial evaluation of Plaintiff's mental health on February 12, 2015 was "unremarkable". (Rule 56.1, at ¶ 24). Dr. Latif concluded that Plaintiff did not display any behaviors that would warrant further psychological treatment. (Rule 56.1, at ¶ 24).

Plaintiff has provided no evidence of, or has even alleged, any extreme or outrageous conduct on the part of the Defendants. Furthermore, under New York law, Intentional Infliction of Emotional Distress is a theory of recovery that is to be invoked only as a last resort, when traditional tort remedies are unavailable. *See EEOC v. Die Fliedermaus, L.L.C.,* 77 F.Supp.2d 460, 472 (S.D.N.Y.1999). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *See Hansel v. Sheridan,* 991 F.Supp. 69, 75 (N.D.N.Y.1998).

## POINT IV

## PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW AGAINST ALL DEFENDANTS

At the summary judgment stage it is well-settled that "negligence claims cannot co-exist with claims for intentional torts." *See Dorn v. Maffei*, 386 F.Supp.2d 479, 486 n.5 (S.D.N.Y. 2005). Because Plaintiff's negligence claims are duplicative of his excessive force, assault, and battery counts, they cannot go to the jury. *See Alvarez v.City of New York*, 2015 WL 1499161, at 11 (S.D.N.Y. 2015); citing *United Nat'l Insurance Co v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993). No evidence exists to support a claim of an unintentional act by the Defendants, and therefore no negligence claim can survive summary judgment as a matter of law.

## POINT V

## SINCE PLAINTIFF MAKES NO CLAIM AGAINST DETECTIVE GRIFFIN, ALL CLAIMS AGAINST HIM MUST BE DISMISSED.

Plaintiff names as a Defendant in this matter Detective Wendell Griffin. Detective Griffin was present during the initial arrest of plaintiff in Mount Vernon, he remained with Plaintiff while Officer Campo went inside the building to seek entry into the apartment with Plaintiff's keys, and he escorted Plaintiff up to the apartment along with Officer Vitelli. Once inside the apartment, he had no further contact with Plaintiff. Plaintiff does not allege that Griffin subjected him to any level of force, and certainly does not allege that Griffin engaged in the use of excessive force. Similarly, Plaintiff does not claim that Griffin was either present when he as being subjected to excessive force or that Griffin failed to intervene when given the opportunity to stop excessive force. To the contrary, other than including his name in the caption of his amended complaint, Plaintiff makes no reference to Griffin in any of his claims. Plaintiff does

claim that Griffin was present when he was arrested, claims that Griffin drive the car he was placed in, and was present when the search warrant was executed.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under U.S.C. Section 1983. *See Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir. 2001); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 383 (S.D.N.Y. 2013). "A police officer is personally involved in the use of excessive force if he either (1) directly participates in an assault; or (2) was present during the assault, but did not intervene on behalf of the victim *even though he had a reasonable opportunity to do so.*" *See Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (emphasis added). Mere presence at the scene is not enough to create a disputed issue of material fact—a plaintiff must proffer "some competent evidence that he was attacked by the officers." *Id.* at 475; *see also Rodriguez v. City of New York,* No. 10 Civ. 9570, 2012 WL 1658303, at *5 (S.D.N.Y. May 11, 2012) ("[T]he mere fact that [an officer] was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it.").

In this case, Plaintiff simply fails to make any allegations against Detective Griffin which could be liberally interpreted to sound in constitutional tort. Consequently, the claims against Detective Griffin must be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Defendants' motion should be granted in its entirety.

Dated:  White Plains, New York
January 3, 2016

Respectfully submitted,

THE QUINN LAW FIRM
Attorneys for Defendants

Andrew C. Quinn, Esq.
399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555